# STATE OF MICHIGAN

# COURT OF APPEALS

AUTO-OWNERS INSURANCE COMPANY,
HOME-OWNERS INSURANCE COMPANY,
and CALEB CASANOVA,

          Plaintiffs-Appellees,

v

COMPASS HEALTHCARE PLC d/b/a
COMPASS HEALTH, and LANSING
NEUROSURGERY,

          Defendants-Appellants.

FOR PUBLICATION
December 18, 2018

No. 339799
Ingham Circuit Court
LC No. 16-000870-CK

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

BOONSTRA, P.J. (*concurring*).

I concur in the result reached by the majority and in much of its reasoning. I write separately to offer an alternative rationale. In essence, I conclude that where a healthcare provider seeks to collect on a "balance bill"[1] from an injured person who is entitled to no-fault benefits, the claim is in the nature of a contract claim; nonetheless, the contract in question is necessarily subject to principles of public policy as expressed in the no-fault act, MCL 500.3101 *et seq*. Under the circumstances of this case, those principles preclude defendants from collecting on their balance bill to plaintiff Caleb Casanova.

The no-fault act is a statutory scheme that "provides a system of mandatory no-fault automobile insurance, which requires Michigan drivers to purchase personal protection insurance." *AOPP v Auto Club Ins Assoc*, 257 Mich App 365, 373; 670 NW2d 569 (2003). "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). Generally, "personal protection insurance benefits are payable for . . . [a]llowable expenses consisting of all

---

[1] Generally, a balance bill is an invoice from a healthcare provider to its patient, following the provider's receipt of a partial payment from an insurer, requesting payment for the difference between the original charge and the amount of the partial payment received, i.e., the "balance."

-1-

reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1).[2] "Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to of for the benefit of his dependents." MCL 500.3112.

This means, as is undisputed, that the no-fault act allows an injured person to bring suit against an appropriate insurer for benefits due under the act. Our Supreme Court has held, however, that a healthcare provider does not possess "a statutory cause of action against a no-fault insurer." *Covenant Medical Center, Inc v State Farm Mutual Auto Insurance Company*, 500 Mich 191, 217; 895 NW2d 490 (2017).

This case, however, does not present a claim by either an injured person or a healthcare provider against a no-fault insurer. Defendants did not bring suit against either plaintiff insurers (which, as noted, *Covenant* determined they had no statutory right to do) or against plaintiff Casanova. Instead, this is an action for declaratory relief brought by the insurers and Casanova against Casanova's healthcare providers. Underlying that dispute is defendant providers' efforts to secure payment from Casanova for the amount of their balance bill.[3]

The questions presented in this case include whether a healthcare provider may seek payment from its patient (the injured person) for a balance bill, the nature of any such claim, and the extent (if any) to which the provisions of the no-fault act are implicated with respect to that claim. As noted, I conclude that it may do so,[4] that its claim is in the nature of contract, and that

---

[2] By its terms, MCL 500.3107(1) limits an insurer's liability to that of paying for "reasonable" charges. Consistent with that limitation, MCL 500.3157 provides that "[a] physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the products, services and accommodations rendered." *Id*. However, [t]he charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance." *Id*. Where contested, the question of what constitutes a "reasonable" charge is generally one for the fact-finder. *AOPP*, 257 Mich App at 380. See also *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 448; 814 NW2d 670 (2012).

[3] Plaintiff insurers have already made payment to defendants for what the insurers determined to be reasonable charges for defendants' medical services to plaintiff Casanova. Defendants did not bring suit against Casanova for payment of the balance bill, but did send him a series of invoices requesting payment, even in the face of plaintiff insurers' demands that they cease doing so.

[4] The caveat to this conclusion, however, is that "the amount chargeable to the patient (§ 3157) . . . is limited, by statute, to a reasonable amount." *AOPP*, 257 Mich App at 374. See also *Covenant*, 500 Mich at 217 ("a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges").

-2-

the principles of the no-fault act nonetheless are implicated so as to in this case preclude defendant providers from collecting on their balance bill to Casanova.

Given that the no-fault act is a statutory insurance scheme, and that defendant providers' relationship with Casanova is one relating to the provision of healthcare services rather than insurance, I conclude that a claim or cause of action by defendant providers against Casanova for payment for those services does not arise under the no-fault act itself, but instead is necessarily one arising from contract, albeit in this case an implied contract for the provision of healthcare services. Certainly, the no-fault act is implicated, but only because Casanova is entitled to insurance coverage from plaintiff insurers with respect to payment for those healthcare services. But the no-fault act does not itself provide a right of action by a healthcare provider against its patient for payment for services rendered. That cause of action, to the extent it exists, instead lies in contract. See *McGill v Auto Assoc of Mich*, 207 Mich App 402, 406; 526 NW2d 12 (1994), quoting *Nasser v Auto Club Ins Assoc*, 435 Mich 33, 49; 457 NW2d 637 (1990) ("To the extent that plaintiff has any liability for these expenses [charged by the healthcare provider] in the event his insurance does not pay, it is presumably contractual.").[5]

Indeed, no party to this case maintains otherwise. That is, plaintiffs do not dispute defendants' general contention that their claim against Casanova lies in contract. Indeed, for the reasons noted, it must. I therefore conclude that to the extent the trial court held that defendants' claim against Casanova was not contract-based, it erred.[6]

The real dispute in this case is the extent, if any, to which the limitations of the no-fault act apply to defendants' claim against Casanova notwithstanding the contractual nature of that claim. Defendants describe their contractual right as "unfettered." And they cite *Covenant* as "expressly reaffirm[ing] the legal right of medical providers to seek payment of unpaid medical bills directly from their patients." Yet they seem to acknowledge that the contractual right is fettered in at least one respect. That is, defendants acknowledge that they remain subject to the "reasonable" charge limitation of MCL 500.3157.[7] Indeed, in holding that healthcare providers have no statutory right of action against no-fault insurers, *Covenant* couched its corollary acknowledgement (that a provider may still have a claim is against its patient) in terms of that limitation. *Covenant*, 500 Mich at 217 ("This conclusion [that a healthcare provider does not

---

[5] Of course, nothing about this conclusion would, in a different context, support an argument that a claim of medical malpractice should instead be characterized as one for breach of contract. See, e.g., *Grewe v Mt Clemens General Hosp*, 47 Mich App 111, 113-114; 209 NW2d 309 (1973), citing *Miller v Toles*, 183 Mich 252; 150 NW 118 (1914); *Awkerman v Tri-County Orthopedic Group, PC*, 143 Mich App 722, 725-726; 373 NW2d 204 (1985).

[6] Similarly, to the extent that the majority holds that defendants' claim against Casanova arose under the no-fault act, rather than as a matter of contract, I disagree. For reasons I will note, however, the majority and I ultimately end up in the same place.

[7] Although this acknowledgement was equivocal in defendants' briefing on appeal, it was express and unequivocal at oral argument.

possess a statutory cause of action against a no-fault insurer] does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's *reasonable* charges.") (emphasis added; footnote omitted); see also *Nasser*, 435 Mich at 55-56 ("It seems unlikely that plaintiff would have an express agreement with [his doctor] or the hospital to pay *unreasonable and unnecessary* medical expenses, and equally as unlikely that he would have an implied contractual duty to do so.") (emphasis added).

Of course, defendants did not bring suit against Casanova seeking a determination of the reasonableness of their charges. Under *AOPP*, healthcare providers "may challenge [an insurer's] failure to fully reimburse them for medical bills as a violation of the act, but they have the burden of establishing the reasonableness of the charges in order to impose liability on the insurer." *AOPP*, 257 Mich App at 380. *Covenant* clarified that any such suit must be against the injured person, rather than the insurer. *Covenant*, 500 Mich at 217. And in that event, the insurer is obligated to "defend and indemnify the insured." *AOPP*, 257 Mich App at 380. See also *LaMothe v Auto Club Ins Assoc*, 214 Mich App 577, 583-584; 543 NW2d 42 (1995), overruled on other grounds by *Covenant*.

What defendants did instead was to accept plaintiff insurers' August 5, 2014 partial payment of $1,076.14[8] and to then almost immediately begin sending Casanova a series of invoices, and to reject or ignore plaintiff insurers' entreaties for defendants to cease doing so, seeking payment of the full amount of the balance bill (for the additional amount of $782.86) without a judicial determination of the reasonableness of defendants' charges.[9] By doing so, they effectively tried to circumvent the limitations of MCL 500.3157, denied plaintiff insurers the opportunity to fulfill their legal obligation to defend and indemnify Casanova with respect to the balance bill, and did so while failing even to apprise Casanova of defendants' burden of proving reasonableness or Casanova's right to be defended and indemnified by plaintiff insurers. For the reasons that follow, it is unnecessary for us to determine the propriety of that course of conduct, but to me it seems highly questionable on its face.

---

[8] In certain circumstances, healthcare providers are required to accept, as payment in full, the amount paid by the insurer, and they therefore may not "balance bill" the patient. See, e.g., MCL 400.111b(14) ("Except for copayment authorized by the department and in conformance with applicable state and federal law, a provider shall accept payment from the state as payment in full by the medically indigent individual for services received."); 42 CFR 447.15 ("A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual.") Similar limitations frequently arise contractually.

[9] If by sending those invoices defendants had been able to successfully induce Casanova to make full payment short of litigation, then defendants would have successfully avoided a judicial determination of reasonableness in favor of their own effectively unilateral determination that their full charge constituted a reasonable charge.

The reason that we need not decide that question in this case is that defendants' own course of conduct—foregoing a judicial determination of reasonableness in favor of sending invoices to Casanova on at least nine separate occasions between August 13, 2014 and August 10, 2016[10]—caused the claim to become untimely and the balance bill therefore to become uncollectable. Indeed, this points us to the real crux of the dispute in this case, i.e., whether the no-fault act's one-year-back rule, MCL 500.3145, applies. I conclude that it does.

MCL 500.3145(1) provides:

An action for recovery of personal protection insurance *benefits payable under this chapter* for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, *the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. . . .* (Emphasis added).

Defendants maintain that because their claim against Casanova is contractual and not brought under the no-fault act itself, the balance bill charges that defendants seek to collect are not "benefits payable under this chapter." MCL 500.3145(1). I disagree. Initially, I find it impossible to reconcile defendants' contention with its own conduct and acknowledgements. That is, defendants acknowledge that Casanova was injured in a motor vehicle accident and that plaintiff insurers were obligated under the no-fault act to provide personal protection insurance benefits with respect to Casanova's receipt of medical treatment for those injuries. Defendants further acknowledge that their charges for that medical treatment are subject to the "reasonable" charge limitation of MCL 500.3157, and that plaintiff insurers made payment to them of the amount that the insurers determined to be a reasonable charge. Consequently, defendants' position at bottom is that the paid portion of the charges ($1,076.14) constitutes "benefits payable under this chapter," MCL 500.3145(1), but that the unpaid portion of the charges ($782.86) does not. While clever, that argument strikes me as too cute by half. If accepted, it would enable defendants, while facially acknowledging that they are limited under the no-fault act to reasonable charges, to accept payment for a portion of the charges (i.e., the portion the insurers deemed to be reasonable), evade a judicial determination regarding whether the balance of the charges is reasonable (which, if found by a fact-finder to be reasonable, the insurer would remain obligated to pay), and yet insist that the patient pay the full balance as not subject to the reasonable charge limitation of MCL 500.3157. The more one parses the contorted and circular logic of that proposition, the more obvious its ludicrousness appears. Simply put, the fact that health care providers do not possess a statutory cause of action directly against no-fault insurers,

---

[10] Defendants also sent an invoice to Casanova on a tenth occasion on December 14, 2016, after plaintiffs commenced this declaratory judgment action.

*Covenant*, 500 Mich at 217, does not mean that the balance bills they direct to their patients are for something other than "benefits payable under" the no-fault act. Those bills remain subject to the "reasonable" charge limitation of the no-fault act, the insurers remain liable to the extent the charges are determined to be reasonable, and the amounts sought to be collected therefore constitute "benefits payable under" the no-fault act.[11]

Defendant further maintains in this regard that a healthcare provider's balance bill claim is a "stand-alone contract action between the provider and its patient." Consequently, defendants argue, such a claim is subject to a six-year statute of limitations. However, a person injured in a motor vehicle accident remains subject to the one-year-back rule of the no-fault act. Defendants effectively posit, therefore, that they are entitled wait up to six years before bringing a balance bill suit against Casanova—and that they therefore may wait up to six years before seeking a judicial determination of what constitutes a "reasonable charge"—even though, under the public policy as set forth in the no-fault act, Casanova would by then be long ago foreclosed from seeking coverage from his insurers for the services provided by defendants. Further, because the scope of an insurer's duty to defend is at least in part dependent on policy language, see *Radenbaugh v Farm Bureau General Ins Co of Mich*, 240 Mich App 134, 138; 610 NW2d 272 (2000) (citations omitted), it is at least possible that Casanova would at that juncture be precluded even from demanding that plaintiffs fulfill their obligation to defend him with respect to defendants' balance bill claim.[12]

The public policy enacted by the Legislature in the form of the no-fault act affords to persons injured in a motor vehicle accident a right to personal protection insurance benefits, and a right to have their insurer defend and indemnify them with respect to a claim for such benefits, subject to the limitations of the one-year-back rule. It would be anomalous indeed to allow a healthcare provider to divest an injured person of such rights, and thereby to subvert the public policy of this state, by failing to act in a manner that would allow the injured person to assert his or her rights in a timely fashion, all under the guise of a characterization of the provider's cause of action against the injured person as a "stand-alone contract action." I conclude that a healthcare provider's cause of action in such a circumstance cannot properly be characterized as a "stand-alone contract action." To the contrary, it is a contract-based claim that remains subject to public policy as expressed in the no-fault act. In other words, it is based on a contract, albeit

---

[11] I also reject defendants' argument that the balance bills are not for "benefits payable under" the no-fault act because they are seeking payment for services rendered to Casanova rather than seeking benefits payable *by Casanova*. The fact remains that the insurers remain liable for those charges to the extent they are judicially determined to be reasonable and therefore they are "benefits payable under" the act even though payable by the insurers rather than Casanova.

[12] Although not an issue in this case, if Casanova's claim for no-fault benefits had been assigned to an insurer through the Michigan Assigned Claims Plan, he would have had to commence "[a]n action to enforce rights to indemnity or reimbursement against a third party" within "the later of 2 years after the assignment of the claim to the insurer or 1 year after the date of the last payment to the claimant." MCL 500.3175(3).

in this case an implied one, that necessarily is subject to the public policy limitations of the no-fault act, including the one-year-back rule of MCL 500.3145.

I find it unnecessary to definitively address the mechanism by which the contract in this case is subject to the public policy limitations of the no-fault act, because the result is the same in any event, i.e., defendants are precluded from collecting their balance bill to Casanova under the circumstances of this case. That is, it matters not for purposes of this case whether, for example, the contract in question should be reformed in accordance with the public policy of the no-fault act, see *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 257, 263; 819 NW2d 68 (2012) (citation omitted) (noting the ability of a court to reform an insurance policy to be "compatible with the existing public policy as reflected in the no-fault act,"), or whether the contract should be deemed, in whole or in part, unenforceable, see Restatement (Second) of Contracts § 178(1) ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."); 17A CJS Contracts § 278 ("Contracts that violate public policy are unenforceable."); 17A Am Jur 2d § 231 ("parties may not privately contract to contravene a state's public policy or to circumvent or disregard a statutory prohibition based on public policy") (footnotes omitted); 17A CJS Contracts § 271 ("A court will not enforce a contract if it contravenes a statute. . . . A contract that is contrary to the terms and policy of an express legislative enactment is illegal and unenforceable. A contract provision is unenforceable if it fails to comply with existing, governing statutory requirements by attempting to provide fewer rights than legally mandated by statute, as one cannot do indirectly that which the law does not allow to be done directly.") (footnotes omitted).

It is indisputable that the no-fault act, as a statutory scheme enacted by our Legislature, reflects the public policy of this state. See *Rory v Continental Ins Co*, 473 Mich 457, 471; 703 NW2d 23 (2005) ("In ascertaining the parameters of our public policy, we must look to 'policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law.' ") (footnote omitted).[13] Consequently, a contract (including a contract for the provision of healthcare

---

[13] I do not invoke public policy lightly, and I do so with full appreciation that "public policy 'is not merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law.' " *Rory*, 473 Mich at 471, citing *Terrien v Zwit*, 467 Mich 56, 66–67, 648 NW2d 602 (2002). The Court in *Terrien* further stated:

> In defining "public policy," it is clear to us that this term must be more than a different nomenclature for describing the personal preferences of individual judges, for the proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not simply assert what such policy *ought* to be on the basis of the subjective views of individual judges. This is grounded in Chief Justice Marshall's famous injunction to the bench in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), that the duty of the judiciary is to assert what the law "is," not what it "ought" to be.

services) may not contravene the public policy of this state as expressed in the no-fault act. If or to the extent that defendants' enforcement of their implied contract with Casanova would do so, the law will not permit it. For the reasons stated, I conclude that defendants' efforts to collect their balance bill from Casanova in a way that would circumvent the reasonable charge limitation of MCL 500.3157, and in a way that would preclude Casanova from proceeding in a timely manner under MCL 500.3145 to invoke his insurers' duty to defend and indemnify him with respect to the balance bill, is not permitted under the public policy of the no-fault act. Defendants' claim against Casanova therefore fails.

Defendants additionally maintain that MCL 500.3145 does not apply because it only limits a "claimant" from recovering benefits for losses incurred more than one year before the commencement of the action, and the Supreme Court in *Covenant* declared that healthcare providers are not "claimants" under the no-fault act. However, *Covenant* merely held that healthcare providers do not have a statutory right to directly sue a no-fault insurer. In other words, providers lack standing to bring suit against an insurer under the no-fault act. The Court did not, however, assess whether a healthcare provider's balance bill claim against its patient is subject to the limitations of the one-year-back rule. In my judgment, it is improper to lift the Supreme Court's language out of the context in which it was used, see *Covenant*, 500 Mich at 217 n 37, and employ it as a weapon against the public policy clearly expressed by the Legislature. Instead, for the reasons stated, I conclude that the contract on which defendants base their claim against Casanova is subject to public policy as expressed in the no-fault act, including both MCL 500.3157 and MCL 500.3145.

Effectively, this means that while defendants' claim against Casanova is based in contract, it is not subject to the usual six-year statute of limitations generally applicable to contract actions. Rather, MCL 500.3145 effectively superimposes upon the contract (whether by reformation or by a limited-in-time enforceability) a shortened statute of limitations as described in that section. Specifically, defendants were obliged to commence the action within "1 year after the date of the accident,"[14] with certain exceptions. *Id*. Because plaintiff insurers made a partial payment on August 5, 2014, the time for filing suit was extended to "1 year after the most recent allowable expense, work loss or survivor's loss has been incurred." *Id*. The only allowable expenses were incurred on July 4, 2014. Consequently, MCL 500.3145 required that suit be filed by July 4, 2015. See *Douglas v Allstate Ins Co*, 492 Mich 241, 258-259; 821 NW2d 472 (2012).

---

[Emphasis in original.]

Rather, "[i]n identifying the boundaries of public policy, . . . the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Terrien*, 467 Mich at 66–67 (footnote omitted).

Indisputably, the no-fault act represents public policy that is deeply rooted in the statutory law of this state.

[14] The accident occurred on July 3, 2014.

In this case, however, defendants never commenced an action against Casanova. Defendants' claim against Casanova is therefore time-barred. Moreover, MCL 500.3145(1) precludes claims "for any portion of the loss incurred more than 1 year before the date on which the action was commenced," MCL 500.3145(1), which in this case is the entirety of the balance bill.

For all of these reasons, I conclude that although the trial court incorrectly determined that defendants' claim against Casanova was not based in contract, it reached the correct result, as does the majority. I therefore concur in the majority's determination to affirm the ruling of the trial court granting summary disposition in favor of plaintiffs.[15] I also concur in the majority's determination to reverse the trial court's award of reasonable attorney's fees and costs under MCL 445.257(2).

/s/ Mark T. Boonstra

---

[15] Contrary to defendants' assertions, this result does not leave healthcare providers generally without a remedy. Nor does it require that they accept insurers' unilateral determination of what constitutes a reasonable charge. To the contrary, providers need only (among other possible remedies) bring suit against their patients within the time period afforded by MCL 500.3145, see *Douglas*, 492 Mich at 258-259, and seek a judicial determination of what constitutes a reasonable charge.